.THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CLEMENT DENTLEY, Defendant-Appellant.

(No. 12670;

Fourth District—September 4, 1975.

Richard J. Wilson and Bruce Stratton, both of State Appellate Defender's Office, of Springfield, for appellant.

Richard J. Doyle, State's Attorney, of Danville (G. Michael Prall and Jacqueline K. Nejmanowski, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE CRAVEN delivered the opinion of the court:

Clement Dentley and William Logan were indicted for the offenses of rape, deviate sexual assault, and robbery. Logan was acquitted on all counts, while Dentley was acquitted of deviate sexual assault and robbery, but convicted of rape and sentenced to not less than 10 nor more than 30 years in the Illinois State Penitentiary. He appeals, contending that the trial court erred in denying his motion for appointment of a psy-

chiatrist to examine the complaining witness and abused its discretion in imposing a sentence in excess of the statutory minimum.

At trial, Janet Donaldson testified that on July 21, 1973, she attempted to hitch a ride to downtown Champaign with Dentley and Logan, but was taken instead to a rural area of Vermilion County. Donaldson described both defendants in some detail and identified them at trial. When the car came to a stop, she made an attempt to escape, but was intercepted by the defendant, who threw her to the ground, fracturing her shoulder. The defendant displayed a knife and ordered her to perform an act of fellatio; when she hesitated, he angrily pulled her down by the hair and she cooperated. Subsequently, she was ordered into the car and ordered to perform another act of fellatio on the defendant while Logan had vaginal intercourse with her. During this activity, the defendant put his hands around her neck and began to strangle her, leaving scratch marks, and hit her in the face and head with his fist. Finally, he displayed a machete and forced her to have both vaginal and anal intercourse with him. She was at last let out of the car with a warning from defendant that if she told anyone, he would get his gang to burn down her family's home.

Donaldson walked to the highway and flagged down a truck. The driver testified at trial that he had been stopped by a woman standing in the middle of the road who was hysterical and cried, "I have been raped. I need help." She had no shoes on, no undergarments, and had mud and blood on her. She told the driver her head hurt. A deputy at the Vermilion county jail, where the truck driver brought Donaldson, corroborated the driver's description of her hysteria and physical appearance. He also noted that she was crying and had scratch marks on her neck. A hospital emergency room examination revealed sperm and lacerations of the vaginal wall, as well as a fractured clavicle.

Prior to trial, the State was granted a continuance on the basis of a motion supported by an affidavit stating that the complaining witness was unavailable for trial because of various hospitalizations and outpatient treatment. Included was a letter from her doctor, to the effect that she had been under psychiatric care for about 8 years for major psychotic disturbances, and that a trial at that time would be detrimental to her mental state. In response to this motion, defendant filed a motion for appointment of a psychiatrist to examine Donaldson, noting the difficulty of calling her out-of-state doctor and alleging the need for competent local evaluation of her mental state. The defendant's motion was continued by the court until trial.

When the case finally came to trial on January 15, 1974, the 23-year-old complaining witness testified that she had been receiving treatment for

hallucinations and paranoia since she was 15. She admitted to various hospitalizations because of her mental problems, both before and after the incident in question. She testified that she could always distinguish the hallucinations, which took the form of faint voices emanating from inanimate objects, from reality. After this testimony, the defendant renewed his request for psychiatric examination, and the trial court denied that request.

■■ There is no question of the court's jurisdiction to order an examination of the complaining witness in a case involving a sex violation..(*People v. Glover*, 49 Ill.2d 78, 273 N.E.2d 367; *People ex rel. Noren v. Dempsey*, 10 Ill.2d 288, 139 N.E.2d 780.) Nevertheless, the court is within its discretion to refuse to order a psychiatric examination when the party desiring such an order has presented no compelling need therefor. *Glover*; *People v. Powell*, 9 Ill.App.3d 722, 292 N.E.2d 577.

In the instant case, the complaining witness took the stand and freely discussed her mental problems. The defendant introduced no evidence at trial or in the papers accompanying his motion for an examination to indicate that the witness' mental condition affected her ability or willingness to tell the truth. Moreover, there was substantial corroboration of Donaldson's testimony by persons who viewed her shortly after the incident, and by the physical examination revealing the fractured clavicle, scratch marks, lacerated vaginal walls, and the presence of sperm in the vagina. A knife and machete were found in defendant's car after his arrest, as described by the complaining witness. Thus, this is not a case where the defendant's freedom hinges on the uncorroborated testimony of a doubtful witness. We find the trial court to have been within its discretion in refusing to order a psychiatric examination.

■■ Defendant next contends that the circumstances of the case did not justify imposition of a greater than minimum sentence. The evidence was that this was a particularly brutal attack, involving not only the threat with both knife and machete, but also the injury to Donaldson's shoulder, blows to her head, and attempted strangulation. While the defendant had no prior felony convictions, his record reflected numerous minor convictions for fighting, public intoxication, and misuse of weapons. The presentence report was not one to spark hope of quick rehabilitation. We cannot say that the 10- to 30-year sentence is greatly at variance with the purpose or spirit of the law, or manifestly in excess of the proscriptions of the Illinois Constitution. (*People v. Sprinkle*, 56 Ill.2d 257, 307 N.E.2d 161.) Accordingly, we affirm the trial court.

Judgment affirmed.

TRAPP, P. J., and GREEN, J., concur.