Clement **DENTLY**, Petitioner-Appellee,

v.

Michael P. **LANE** and The Attorney General of the State of Illinois, Respondents-Appellants.

No. 82–2360.

United States Court of Appeals, Seventh Circuit.

Argued March 31, 1983.

Decided July 18, 1983.

---

Michael V. Accettura, Chicago, Ill., for respondents-appellants.

Gail A. Niemann, Jenner & Block, Chicago, Ill., for petitioner-appellee.

Before PELL and CUDAHY, Circuit Judges, and JAMESON, Senior District Judge.*

JAMESON, District Judge.

This is an appeal from an order granting the petition of Clement Dently for a writ of habeas corpus based on the denial of effective assistance of counsel in state proceedings where Dently was convicted of rape. We reverse.

### Factual Background

On July 21, 1973, Janet Donaldson reported to the Danville, Illinois police that while hitchhiking she was picked up by two men who drove her out into the country and raped her. She described her attackers as two negro males, one with a scar on his face and the other wearing a red knit cap and a gold earring in one ear. Two suspects, Dently and Willie Logan, were arrested that evening. The next day they were placed in a lineup with three other men. Donaldson identified Dently, the only person in the lineup with a scar on his face, as an assailant. She thought Logan was the second assailant, but said she could not identify him with certainty because he wasn't wearing an earring and his hair looked different. Logan was represented at the lineup by a privately retained attorney. Dently was not represented.

On August 23, 1973, Dently and Logan appeared for their preliminary hearing. Edward Litak, the Public Defender of Vermilion County, was appointed to represent both. A deputy sheriff testified that Janet Donaldson had positively identified Dently in the lineup, but that she had difficulty identifying Logan. Litak advised Dently to plead guilty to the rape charge in exchange for having the charges of deviate sexual assault and robbery dropped.

On September 17, 1973, Dently and Logan were both charged in a three count indictment with rape, deviate sexual assault, and robbery. Litak represented both defendants at the arraignment on September 21 and advised the court that each defendant wished to enter a plea of not guilty. At the conclusion of the arraignment, Dently told the judge: "I am firing my attorney as of now. I don't want him as my attorney on the grounds he refuses to cooperate with me." The record contains no indication that the trial judge investigated Dently's complaint or questioned him or counsel about the request for a new attorney. The court questioned Dently about his assets and later that day appointed Kenneth Blan, the Assistant Public Defender of Vermilion County, to represent him. It does not appear that the judge told Dently that Blan was an assistant public defender.

Blan graduated from law school in 1971 and was admitted to the bar in November of 1972. He was hired by Litak as an assistant public defender in 1973 with the regular assignment of defending family and juvenile matters. In addition to being public defenders, Litak and Blan each maintained private offices in separate locations and had no other common or professional association. Dently was the first criminal defendant charged with a felony that Blan represented.

Blan first met Dently on September 26, 1973, at the Vermilion County jail. He did not tell Dently at that time or at two subsequent meetings that he was an assist-

ant public defender. A letter to Dently dated October 15, 1973, however, indicated that he was an assistant public defender of Vermilion County.

The trial was first set for October 30, 1973. It was continued for sixty days for the reason that the complaining witness, Janet Donaldson, could not testify at that time because of severe emotional problems. Donaldson suffered from a psychotic condition that caused her to hallucinate and hear voices from inanimate objects. She also suffered from paranoia and had received treatment for hallucinations and paranoia for eight years. On December 26, 1973 Blan and Litak filed a joint motion for the appointment of a psychiatrist to examine Donaldson. The motion was continued to trial when it was denied. Neither attorney made any attempt to subpoena Donaldson's psychiatric records or her psychiatrist.

Dently told Blan on September 26, 1973 that three women could provide an alibi. Blan sent the investigator for the public defender's office to interview them. Blan did not speak with the women himself. They were not called as witnesses at the trial.

On October 24, 1973, Litak filed a motion on behalf of Logan to sever his trial from Dently's, asserting that because of the identification evidence, the defense of one of the defendants would prejudice the other. Blan joined Litak with a similar oral motion at trial, but made no written motion to sever on behalf of Dently. On January 9, 1974, the trial court denied the motion, and Dently and Logan proceeded to trial as co-defendants.

*Trial and Subsequent Proceedings*

Trial commenced on January 14, 1974. Blan did not make a pretrial motion to suppress the lineup identification of Dently. But at the close of the state's case-in-chief, he did attempt to suppress the lineup iden-

tification on the basis it was overly suggestive. The trial judge never ruled on Blan's oral motion because it was untimely, as noted at trial by Litak and the state's attorney.

Blan's principal defense was that the rape might have taken place in Champaign County rather than Vermilion County and thus the prosecution failed to prove the venue element of the crime. Logan was acquitted on all three charges. Dently was found guilty of rape, but acquitted on the charges of deviate sexual assault and robbery.

Blan continued to represent Dently after his conviction. Blan filed a motion for a new trial on January 30, 1974. He represented Dently at the sentencing on March 7, 1974, when Dently was sentenced to not less than ten nor more than thirty years in prison.

Following sentencing on March 7, the deputy defender of the office of state appellate defender was appointed to represent Dently on appeal. The appeal raised only two questions: (1) that the trial court erred in denying Dently's motion for appointment of a psychiatrist to examine Donaldson; and (2) that his sentence was excessive. On September 4, 1975, the Illinois Appellate Court, Fourth District, affirmed petitioner's conviction and sentence. *People v. Dently,* 31 Ill.App.3d 679, 334 N.E.2d 774 (1975). The Illinois Supreme Court denied Dently's petition for leave to appeal.

Dently then sought relief under the Illinois Post-Conviction Hearing Act (Ill.Rev. Stat.1975, Ch. 38, Par. 122–1). The State's motion to dismiss his petition for post-conviction review was granted on March 17, 1977.[1] The appellate court affirmed the dismissal on April 14, 1978, in an unpublished order, noting that Dently argued on appeal "(1) that a conflict of interest existed because the public defenders' office represented both Dently and his co-defendant,

---

1. The motion to amend the petition for postconviction relief was filed by counsel for Dently on October 12, 1976, followed by filing of supporting affidavits on November 8. A motion to dismiss the appeal was filed on November 15,

1976. Oral argument was presented on January 20, 1977 and the motion taken under advisement. It was granted without an evidentiary hearing in a written order entered on March 17, 1977.

even though the two possessed antagonistic defenses; and (2) that Dently was denied effective assistance of counsel." In affirming the dismissal, the appellate court held that Dently's failure to raise these issues on direct appeal resulted in a waiver precluding post-conviction review.

On October 23, 1978, Dently filed a *pro se* petition for a writ of habeas corpus in the United States District Court for the Eastern District of Illinois, alleging that he was denied the effective assistance of counsel in the state proceedings. The State moved for summary judgment, and the district court granted the motion without conducting an evidentiary hearing. Dently appealed and counsel was appointed to represent him. In November 1981, this court reversed and remanded for an evidentiary hearing. *Dently v. Lane,* 665 F.2d 113 (7 Cir.1981). In an order dated July 27, 1982, the district court granted Dently's habeas petition. On August 4, 1982 the State moved the district court to reconsider the order. That motion was denied on August 12, 1982.

### Contentions on Appeal

Appellants contend that the district court erred (1) in not dismissing Dently's petition for writ of habeas corpus based upon the waiver doctrine, since Dently failed to raise the issues of ineffective assistance of counsel and conflicting representation on direct appeal in state court; (2) in holding that Dently's "firing" of Litak should have alerted the trial judge to the possibility of a conflict of interest; (3) and in holding that Dently and his co-defendant were jointly represented and that such joint representation affected the adequacy of Dently's representation; and (4) that Blan's representation of Dently did not fall below the minimum professional standard.

### Waiver Doctrine

It is appellants' primary contention on this appeal that since Dently did not raise the issues of ineffective assistance of counsel and conflicting representation on direct appeal, he was precluded under the waiver doctrine from doing so through his habeas corpus petition. At the outset, we note that on April 5, 1982, subsequent to the order of this court remanding for an evidentiary hearing, the Supreme Court decided *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783. On November 17, 1982, subsequent to the order of the district court on remand granting Dently's petition for habeas corpus, this court decided *United States ex rel. Veal v. DeRobertis,* 693 F.2d 642; and on January 28, 1983, we decided *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354. We consider the waiver issue in the light of these cases.

As noted above, on direct appeal to the Appellate Court of Illinois, Fourth District, Dently argued unsuccessfully that the trial court should have appointed a psychiatrist to examine the complaining witness and that the sentence imposed was excessive. Dently then filed the petition requesting post-conviction relief. On appeal of the order granting the State's motion to dismiss the petition, Dently argued (1) that a conflict of interest existed because the public defenders' office represented both Dently and his co-defendant even though the two possessed antagonistic defenses; and (2) that Dently was denied effective assistance of counsel. In its order affirming dismissal, the appellate court said in part:

> We need not examine the merits of these issues since we find defendant was precluded from raising the contentions in his petition for post-conviction relief. Dently did not raise the issues at trial or in his post-trial motion following his conviction. Furthermore, defendant did not raise these matters on direct appeal even though he was represented by different counsel than had represented him at trial.[2] In such a situation the judgment of

---

**2.** In a footnote, the court noted "that Dently has been represented by different counsel at every stage of the proceedings: At trial by the public defender's office of Vermilion County, on appeal by the state appellate defender's office, on post-conviction relief by appointed counsel, and on this appeal by yet another appointed counsel. We emphasize that none of the various attorneys who have represented defendant are in any way connected so as to

the reviewing court is *res judicata,* not only to those issues actually raised on appeal, but also to those issues which could have been raised but were not. (*People v. Healey* (1974), 23 Ill.App.3d 214, 318 N.E.2d 89.) The waiver principle will be relaxed only when fundamental fairness requires, or where there is a showing that failure to raise certain issues was due to the incompetency of counsel or otherwise beyond the defendant's control. *Healey;* see *People v. Frank* (1971), 48 Ill.2d 500, 272 N.E.2d 25; *People v. Hamby* (1965), 32 Ill.2d 291, 205 N.E.2d 456.

The court concluded that there was no indication that counsel on appeal was incompetent in not raising the issues of conflict of interest and incompetency of trial counsel; nor was the failure to raise these issues on appeal beyond the defendant's control. The court concluded further that fundamental fairness would not be violated by a strict application of the waiver principle.

In the initial order of the district court, entered April 24, 1979, the court did not discuss the waiver question, but rather dismissed Dently's petition on the merits, based on the court's review of the record. The waiver issue was not raised on the appeal of that order, and this court accordingly did not reach the question in its November 10, 1981 opinion remanding for an evidentiary hearing. On remand appellants contended that Dently had waived the issues of ineffective assistance of counsel and conflicting representation and that those issues could not be considered on habeas corpus review.

The Illinois rules with respect to waiver were reviewed in *Goins v. People,* 103 Ill. App.3d 596, 59 Ill.Dec. 312, 431 N.E.2d 1069 (1981, *reh. denied* 1982), where the court said in part:

> The dispositive issue in this appeal is whether the post-conviction issues have been waived by defendant's failure to raise them at trial or on the direct appeal. Relief under the Post-Conviction Hearing Act is limited to consideration of trial

inhibit them from alleging the incompetency of

errors that result in conviction and constitute a substantial denial of petitioner's constitutional rights. (*People v. Healey* (1974), 23 Ill.App.3d 214, 318 N.E.2d 89.) Failure to raise these constitutional deprivations on the direct appeal generally operates as a waiver. (*People v. Pierce* (1977), 50 Ill.App.3d 525, 8 Ill.Dec. 602, 365 N.E.2d 988.) Hence, the judgment of the reviewing court on the direct appeal is *res judicata* as to all matters that were or could have been raised at that time. (*People v. Healey.*) Strict application of the *res judicata* doctrine is relaxed only in certain circumstances, where fundamental fairness so requires. (See *People v. Ikerd* (1970), 47 Ill.2d 211, 265 N.E.2d 120 (*res judicata* did not apply to bar post-conviction relief where the constitutional right petitioner relied on was recognized for the first time following disposition of petitioner's direct appeal.)) It has also been held that the *res judicata* bar does not apply if the matters relied on are outside the record and therefore could not have been considered on direct review. *People v. Dennis* (1973), 14 Ill. App.3d 493, 302 N.E.2d 651.

59 Ill.Dec. at 597–98, 431 N.E.2d at 1070–71.

In *People v. Healey, supra,* the case upon which the Illinois Appellate Court relied in finding a waiver in this case and which is cited in *Goins,* the court said in part:

> Applying these principles to the instant case, as indicated above the defendant appealed his conviction to this court on the sole issue of the excessiveness of sentence. On appeal, the defendant could have raised those issues which were not waived by operation of his guilty plea. By limiting his appeal to a single issue the defendant thereby waived his right to later assert deprivations of constitutional rights which might have been presented on appeal. Since the defendant was represented on direct appeal by *different* appointed counsel than had represented him at trial, the appeal also waived the right to later assert incompetency of trial counsel. Thus, in the absence of a show-

prior counsel."

ing of causes beyond defendant's control which prevented the assertion of those issues on direct appeal, they were waived by operation of the appeal.

318 N.E.2d at 91.

In a letter to the court, subsequent to the filing of briefs, pursuant to Circuit Rule 11, counsel for Dently rely on *Perry v. Fairman,* 702 F.2d 119 (7 Cir.1983). In *Perry,* this court noted that, "The Illinois courts have recognized that a claim of ineffective assistance of counsel often involves allegations of facts that are outside the scope of the trial court record [citing cases]. As such, an ineffective assistance of counsel claim is not readily raised on direct appeal." In that event, "an ineffective assistance of counsel claim not raised on appeal may be raised in a post-conviction proceeding." (citing cases, including *Goins v. People, supra.*) *Id.* at 122. The court found that *Perry* had asserted such a claim which should properly be raised in state court by way of post-conviction remedy.

Counsel argue that "This is the procedure followed by Dently in pursuing his claim of ineffective assistance of counsel in the Illinois courts." That is true. It is undisputed that Dently had exhausted his post-conviction remedy in state court, as the district court properly found. We are not here concerned, however, with the question of *exhaustion,* as the court was in *Perry v. Fairman,* but rather, solely with the question of *waiver* and an express finding by the state courts that the claims in question had been waived. In that respect *Perry v. Fairman* is clearly distinguishable.[3]

In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the Supreme Court held that a state prisoner, barred by procedural default from raising a constitutional claim on direct appeal, could not litigate that claim in a § 2254 habeas corpus proceeding without showing cause for and actual prejudice from the default. In the recent case of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 1572, 71 L.Ed.2d 783 (1982), the Court noted:

> Issuance of a habeas writ, finally, exacts an extra charge by undercutting the State's ability to enforce its procedural rules. These considerations supported our *Sykes* ruling that, when a procedural default bars state litigation of a constitutional claim, a state prisoner may not obtain federal habeas relief absent a showing of cause and actual prejudice.

After rejecting respondents' contention that *Sykes* should be limited to cases in which the constitutional error did not affect the truth-finding function of the trial, the Court reaffirmed "that any prisoner bringing a constitutional claim to the federal courthouse after a state procedural default must demonstrate cause and actual prejudice before obtaining relief."[4] *Id.*

Here the state appellate court specifically held that Dently's procedural default in failing to present the issues of ineffective counsel and conflict of interest precluded raising these issues in his state court petition for post-conviction relief. The district court on remand, however, concluded that these issues "could not have been deter-

---

**3.** In *Perry v. Fairman,* this court in distinguishing the exhaustion requirement from the waiver doctrine said in part:

> The requirement of § 2254(b) that state remedies be exhausted, refers only to remedies still available at the time of the federal petition. The waiver doctrine, however, is concerned with the situation in which there is no presently available state remedy but the petitioner bypassed an earlier opportunity to have a state court consider his constitutional claim. In such a case, the federal court may decline to exercise its habeas corpus jurisdiction.

(Citing *Engle v. Isaac* and *United States ex rel. Spurlark v. Wolff, supra. Id.* at 120.)

**4.** In the recent case of *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7 Cir.1983), this court, on rehearing en banc, noted that in its previous decision, 683 F.2d 216 (7 Cir.1982), the court rejected respondents' claim that petitioner had failed to exhaust state remedies. It was noted further that petitioner had not presented his claim to the state courts on direct appeal and had therefore forfeited his claim for state collateral attack. On the rehearing en banc it was held that the failure to present a claim to state court similarly works a forfeiture for purposes of a federal habeas corpus action in light of *Engle v. Isaac, supra,* and other pronouncements of the Supreme Court.

mined from facts 'wholly within the record of the trial court' " and therefore the issues "could not have been as adequately raised on direct appeal."

Respondents agree that the waiver doctrine is not applicable where there are unknown facts of which the petitioner is unaware at the time of his initial direct appeal. Under those circumstances the state court on post-conviction review would be unable to find a waiver because the claim (based on facts then unknown) could not have been presented on direct appeal. We agree with respondents that this is not such a case. Dently did, of course, file a motion in state court for post-conviction review; and the state court found that his claim was based on facts known to Dently when he took his direct appeal.

In Dently's *pro se* petition in federal court he gave as "supporting facts" Litak's refusal to cooperate with him; the claim that he did not know that both Litak and Blan were "affiliated with each other"; that Litak remained in the case to represent the codefendant and that "during the trial the defendant's case was prejudiced because his codefendant's witness who testified as to the lineup situation and bolstered the identification against the defendant."[5] Neither the petition nor subsequent motion to amend the petition alleged any facts other than the relationship between Litak and Blan.

The evidence adduced at the March 18, 1982 evidentiary hearing clearly demonstrated through Dently's own deposition that he was aware, prior to his direct appeal, that Blan was an attorney in the public defenders' office. Correspondence from Blan to Dently listed Blan's title as assistant public defender, and Dently admitted on cross-examination that at the time of his direct appeal he "was aware . . . that [Blan] was the public defender." While Dently may not have known that Litak was Blan's superior, he was clearly aware that

Blan was an assistant public defender. Moreover, as the state appellate court noted, on his direct appeal Dently was represented by a deputy defender of the office of the state appellate defender. He had been represented at the trial by the assistant public defender of Vermilion County. These are separate state-created agencies located in different cities. The issues of ineffective assistance of counsel of trial could have been raised by the appellate defender on direct appeal. There is no evidence that Dently requested him to do so or expressed dissatisfaction with Blan's representation at any time prior to his post-conviction petition.

As this court noted in *United States ex rel. Spurlark v. Wolff, supra,* 699 F.2d at 359, the Supreme Court in *Engle* clearly recognized that:

> The States possess primary authority for defining and enforcing the criminal law. In criminal trials they also hold the initial responsibility for vindicating constitutional rights. Federal intrusions into state criminal trials frustrates both the State's sovereign power to punish offenders and their good faith attempts to honor constitutional rights.

102 S.Ct. at 1571. In *Norris v. United States,* 687 F.2d 899, 903 (7 Cir.1982), this court held that in light of the Supreme Court's recent decisions the cause and prejudice test is the proper standard when a federal prisoner raises a claim on habeas corpus that could have been but was not raised on appeal. *Engle* reaffirmed that standard for federal habeas challenges to state court convictions, rejecting the suggestion that it be replaced with a "plain-error" inquiry. 102 S.Ct. at 1575. From our review of the record we are satisfied that Dently failed to demonstrate the required cause and prejudice to permit the habeas relief granted by the district court.

---

**5.** In a subsequent motion to amend his petition, Dently alleged that Blan in defending petitioner was under Litak's direct supervision; that although the court at Dently's request had removed Litak from direct participation in the trial, he was nevertheless in a position to control and govern Blan's conduct; and that this action failed to remove the irreconcilable differences which precipitated the removal of Litak as trial counsel.

## Conclusion

The Illinois appellate court expressly found that petitioner-appellee's procedural default in failing on his direct appeal to raise the issues of ineffective assistance of counsel and conflicting representation barred their consideration in his post-conviction petition. These issues were within petitioner's knowledge and could have been raised on his direct state appeal. Under *Engle v. Isaac* federal habeas corpus relief accordingly is not available absent a showing of cause and actual prejudice. Petitioner failed to demonstrate the required cause and prejudice.[6]

The order granting the petition for a writ of habeas corpus is reversed and the case remanded to the district court for dismissal.

CUDAHY, Circuit Judge, dissenting.

I am compelled to depart from the majority's analysis with respect to cause and actual prejudice. I think that there was adequate "cause" for the appellant's alleged procedural default. *See Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982). A number of Illinois cases have held that an ineffective assistance of counsel claim is properly raised on direct appeal only where the claim involves allegations of facts which are within the trial court record. *Goins v. People,* 103 Ill.App.3d 596, 59 Ill.Dec. 312, 431 N.E.2d 1069 (1981); *People v. Edmonds,* 79 Ill.App.3d 33, 34 Ill.Dec. 555, 398 N.E.2d 230 (1979); *People v. Turner,* 74 Ill.App.3d 840, 30 Ill.Dec. 400, 393 N.E.2d 55 (1979).[1] Where such a claim is based on facts which are *outside* the scope of the trial court record, the generally recognized procedure is to raise the claim in a post-conviction proceeding. *Perry v. Fairman,* 702 F.2d 119, at 122 (7th Cir.1983).[2] The ineffective assistance of counsel claim raised by appellant is based on actions—or inaction—which are not part of the trial court record. Thus, the appellant, relying on what appeared to be controlling Illinois precedent, could reasonably have believed that the proper course for him to follow with respect to his claim was a post-conviction proceeding and he thus had cause for not raising this claim on direct appeal.[3]

I also note that the state did not raise this waiver issue until after this petition had been heard in the district court, was appealed to this court, and was then remanded back to the district court. The state's only excuse for this failure seems to be that the waiver theory did not occur to it until after the Supreme Court's opinion in *Engle v. Isaac.* This can hardly be considered an adequate reason for this delay, since the Supreme Court's decision in *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), would seem to have given the state an adequate basis to, at minimum, raise the theory. If the petitioner is to be held to strict standards of waiver, fairness demands that the state meet the same standards.

I therefore respectfully dissent.

---

6. In view of our holding that petitioner-appellee has waived any right to federal habeas corpus relief, it is unnecessary to consider the other contentions raised on appeal.

1. I believe that the Illinois appellate court here departed from much settled precedent in determining that a waiver occurred. As the discussion of *Perry v. Fairman* indicates, Illinois law seems to direct appellant to raise his ineffective assistance of counsel claims in a post-conviction proceeding, not on direct review.

2. The majority distinguishes *Perry* on the grounds that it involved exhaustion rather than waiver. I do not understand why this fact should in any way undermine the authority of the *Perry* court's description of the state of Illinois law. In that respect *Perry* is entirely apposite to the instant case.

3. Appellant also clearly satisfies the "prejudice" prong of the cause and prejudice test, since his alleged default has now prevented him from bringing his claim to federal court.